morning may it please the court counsel Samuel Kaufman appearing for Mr. Harris the essential issue in this habeas case is whether Mr. Harris who was charged with murder by a firearm was prejudiced by the clear ineffectiveness of his trial counsel as that term is defined in Strickland. And given the standards I guess the question we really have to focus on is was it harmless or not because it's clear that there was you know it could have been very important evidence but in the context we are under a very deferential standard in assessing what the state courts have determined here. So if you can be sure you focus your argument on the prejudice side. And on the EPCA standard if I may amend it. I'm sorry. And on the EPCA standard if I may amend it. On the harmless error issue as filtered through EPCA. Understood. As the court is I'm sure aware the Mr. Harris's wife testified at his trial that his own wife testified that he took out a gun, took off the safety, put it up between the victim's eyes and pulled the trigger. And on the videotape she said otherwise. And on videotape she said very clearly and forthrightly before the trial on to a news station that this was an accidental shooting. It very clearly was an accidental shooting. But she didn't exactly say otherwise because she didn't say I mean it's possible there's some way to reconcile those two. I don't know what it might be. But I mean for example that he pulled it but didn't think there was a bullet in the chamber. Well I mean her statement was that he did not intentionally murder that kid. Right. It was an accidental shooting. That's all there was to it. Did you get I mean exactly what she says is quote he didn't intentionally murder that kid. It was an accidental shooting. That's all there was to it. And that's what she says on the news. And that's after she's been in the car with him where he said you know I didn't mean to do it. It was an accident. Et cetera. Do you have anything I mean you could go back and talk to Ms. Harris you know an investigator and say OK you said on the news clip that it was accidental. What did you see that made it accidental. I mean you don't have anything in the record like that. There's nothing in the record like that. So this is just a conclusory statement based upon the statement that he made. And so how really would have affected me. The way I see it playing out they'll say oh you said you saw this. Well didn't you say on the news that it was accidental. And she said well I said that because he was telling me he didn't intend to shoot it. So it had a shooter. So it had to have been an accident. Well I guess I disagree in the sense that it's a conclusory statement because I you know her testimony at trial was that he raised the gun. He took the safety off put it up between his eyes and shot. And that that is the that is a deliberate shooting. And I don't think there's any way around that. So to say that to say that that could have been also accidental or that I was pressured. There was no there was certainly no testimony at the trial that she was pressured to say something different. But what did what did he say in the car to her after they left home. In essence that it was an accident. And what's going on that she's making the statement he's on a hunger strike or something. He's he's been arrested and he's been in jail and she's I believe commenting on the fact that he's charged with intentional murder as opposed to some lesser offense or even that he's in jail at all. So she's she's she's making a comment about the fact that he's in jail and that she's upset about that. And trying to get some public support for prison. You'd have to say it was accidental and you'd have to buy into his claim that he was twirling the gun like a cowboy. Right. And that that's that's how he was getting up and twirling the gun. But no one else saw that. Everyone else saw something different. Well everyone else saw us with the exception of the one witness Shawny Matthews who we also talk about in the brief. No one else says it says that they saw him raise the gun pull the safety off raise it up between his eyes and pull the trigger. They they see not they don't see the entire event and they don't see that version of events. No one sees him twirling the gun and then standing up. That's correct. So no one says that they see that. It does seem that his that the harmlessness issue would be a lot stronger if his story at trial was you know yes I stood up and I threatened him and I meant to scare him and I threatened him and I threatened him and I pulled the trigger but I didn't think it was I didn't think it would go off. Right. But that wasn't his story. That's the problem. So then you have a different story which is just Moskowitz says nobody saw. Well the the story is essentially that he he unfortunately uses this twirling language but I think that that is mischaracterized by the court below in that the suggestion is that as he's twirling it it accidentally goes off and therefore the the angle you know the the medical witness you know debunks that by the angle but what he really says is that he twirls it and then he stops you know he he calls it post it he stops it and then accidentally it goes off. He can't explain how it did that. It's not a straightforward you know I threatened him and didn't mean to fire. But again the the you know the the theory of defense at trial was that there was a lot of drinking going on. The defendant Mr. Harris was extremely intoxicated as was everybody else in the you know in the interaction. And so I think that explains to a large extent you know how these stories come out and in particular how his it's not a very straightforward this is how it happened. Getting back to what I was saying before about the review of Harris. The record had something. If Harris said you know what I what I saw when I said someone said what do you mean by it was an accident. Well he was sitting down and twirling the gun and it got off and at that point it was faced between his eyes. Then you might have something but you don't have that and you could have that in the record because even post even though that the lawyer didn't press her on this the habeas counsel could have gone out and spoken to Ms. Harris and supplemented the record before the state or here. But that isn't there. So all we have is her statement that it was an accident. But where does that come from. That's pretty conclusory because she doesn't know. I mean she doesn't have videotape of what's going on in his mind that it's accidental. She's concluding that it's an accident. Well my response would be that she couldn't have concluded that had she seen him deliberately take off the safety raise it up and point it. How do you know that. How do you know that that's not what she concluded that he wasn't just trying to I guess it's entirely inconsistent with that. I can't I can't say what she was thinking at the time. So your argument is that we can debate whether or not it hangs together. And that would have been an argument that went on at trial. So you would be saying all right they're trying to suggest it isn't inconsistent. We say it is. The jury hears that and resolves it. So one way or the other. But that didn't happen. So now we have to decide. Whether in the overall context of this trial under APA standards. How do we determine whether it was so injurious to the process that the end of the failure of the defense counsel to give the jury the opportunity to hear that debate in light of all the evidence was indeed prejudicial. Well you know the courts below use this this standard of kind of a button for and I call it kind of a mechanistic but for. We're going to take her. Let's just take her completely out of the mix and just look at the other testimony. And if we decide that the jury could have convicted on that then that's harmless. That's not going to be enough for prejudice under Strickland. What we've argued is that that that is too narrow of an approach in terms of a prejudice analysis because Strickland says specifically what you look at is the fundamental fairness of the trial. You know there is a but for outcome determinative approach. But the fundamental issue that the main issue with the fundamental fairness of the trial. So I believe that you don't just simply take the witness out. You look at what effect that testimony had on the trial itself. And you know I started my remarks by saying this is the man's wife. She's coming up and saying giving testimony that's directly contradictory to his. What did that do to the fundamental fairness of the trial. Given the fact that the jury didn't hear didn't see this inconsistent we believe is a clearly inconsistent statement from the witness. And what did that do to the to the to the process. Why don't you save the rest of your time. Thank you. May it please the court. Carolyn Alexander for respondent. I'd like to begin and my remarks will be brief unless the court has specific questions regarding this fundamental fairness test that petitioner urges this court to adopt. The Supreme Court in Williams versus Taylor rejected that that standard which I understand what he's saying is in in making the probability determination one has to take into account not only what the person said but who the person was and the fact that this was his wife and had as far as I know no no ulterior motives came out at trial. And so it was likely to have more impact than it was if it was a random person. That's all I understand him to be saying. Yes. In fact Your Honor if that's what he's saying within the Strickland analysis then that's correct and that should be considered. But I think what Judge Moskowitz said goes to that. Karen Harris testified or would have testified in a very conclusory manner that this shooting was accidental. And Judge Burzon what you said about the deferential standard and Judge Fischer of EDPA. We have to find that the extensive factual findings made by the Oregon Court of Appeals were an unreasonable determination of the facts in light of the presumption of correctness that those factual findings are not addressed in. So a simple reweighing of the evidence isn't going to get him there. Do we do we know for example I assume we do that the lawyer knew about this document or should have known about it. You know I don't think we know that Your Honor and that that's a question that crossed my mind as well. I don't think that was ever actually established and that's why the Court of Appeals just assumed for a Strickland analysis that counsel was unreasonable for not finding it or for not impeaching. It was on television I guess so you'd think that it would be a little hard to avoid if you're in the community but we don't know. Yeah and I think the Court of Appeals decided rather than try to ferret all of those. Is there anything in the record from the attorney explaining why she did or didn't do this. I don't believe there was Your Honor in this case. I think there wasn't or I think that was one of the problems of the concerning the evidence in the post conviction proceeding. Theoretically she may have known something like for example how Mrs. Harris would have reconciled these things. Correct. But I think the point of the Court of Appeals opinion and their factual review of all of the evidence was that let's give him all of that. Let's assume that trial counsel didn't know about it, should have found it, should have impeached her with her opinion apparent opinion that it was an accident. It just doesn't matter. And as a factual matter the Court of Appeals found that his testimony and his defense that this was an accident was simply incredible given the forensic evidence and the other pieces of the picture that the other witnesses had. And when you put all those pieces of the evidence together, you can't convict him intentionally. That's the only conclusion that you could come. And simply impeaching Ms. Harris for a conclusory statement that she made to a TV station when she's worried about her husband that it was an accident just doesn't overcome all of that other evidence. And certainly the Supreme Court and this Court numerous times have found that there is no prejudice under Strickland when there's overwhelming evidence of guilt. Unless the Court has further questions. I don't think so. Thank you. Just a couple of brief comments in response. First of all, no one's claiming that the Oregon courts made an unreasonable factual determination. We're claiming that the court's application of the Strickland prejudice standard is unreasonable. So that's not before this Court, the factual. Which is a lot further down the scale than we disagree. We have to say, or above the scale than we disagree. We have to say, not only do we disagree, but no reasonable jurist could come to that conclusion. It was unreasonable under Adipa. That's correct. The question about whether trial counsel had obtained the videotape, I think the record reflects that he did not obtain it. Whether he knew about it or knew of its existence is another question. It's clear that not until the state post-conviction process and late in that, that the videotape was actually obtained. There's no record of any explanation from the trial counsel, is there? He did give testimony at the state post-conviction trial. I don't think that was ever asked of him as to why. I don't think what? I don't believe that was ever asked of him as to why he didn't obtain it. Just that he didn't obtain it. And Ms. Harris, she didn't testify at the post-conviction? Ms. Harris did not testify at the post-conviction. Okay. Thank you. Appreciate the argument. Thanks to both counsel. The case argued is submitted.
judges: Fisher, Berzon, Moskowitz